UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

JOEL GODINEZ,                          )   No. CV 08-00091-VBK
                                       )
                Plaintiff,             )   MEMORANDUM OPINION
                                       )   AND ORDER
       v.                              )
                                       )   (Social Security Case)
MICHAEL J. ASTRUE,                     )
Commissioner of Social                 )
Security,                              )
                                       )
                Defendant.             )
_____    )

    This matter is before the Court for review of the decision by the

Commissioner of Social Security denying Plaintiff's application for

disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have

consented that the case may be handled by the Magistrate Judge.  The

action arises under 42 U.S.C. §405(g), which authorizes the Court to

enter judgment upon the pleadings and transcript of the record before

the Commissioner.  The parties have filed the Joint Stipulation

("JS"), and the Commissioner has filed the certified Administrative

Record ("AR").

    Plaintiff raises the following issues:

    1.   Whether the Administrative Law Judge ("ALJ") erred in making

credibility findings as to Plaintiff and as to third party witnesses;

2.   Whether the ALJ failed to provide Plaintiff with a full and fair hearing;[1]

3.   Whether the ALJ failed to adequately comply with the instructions by the Appeals Council in its remand order.

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.

After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.

I

**THE ALJ PROPERLY EVALUATED THE NATURE**

**AND EXTENT OF PLAINTIFF'S SEVERE IMPAIRMENTS (ISSUE NO. 2)**

Plaintiff applied for disability insurance benefits ("DIB") on October 23, 2000.  His date last insured ("DLI") under Title II of the Social Security Act ("Act") is March 31, 2000.  He claims an onset date of July 1, 1997.

Plaintiff was initially accorded a hearing before an ALJ, which resulted in an unfavorable decision dated September 10, 2003. (AR 120-128.)  The Appeals Council issued a remand order on May 26, 2004. (AR 195-198.)  Additional medical evidence was admitted to the record on

---

[1]   As framed by Plaintiff, this issue fails to identify Plaintiff's claims, as set forth in the JS at 15-16.  A correct recitation of the issues encompasses the following: the ALJ failed to develop the record with regard to Plaintiff's foot condition and his seizures, and the ALJ erred in determining Plaintiff's mental status. (See, Id.)  The Court will discuss Issue No. 2 as incorporating these separate contentions.

1   remand. (AR 2, 507-544.)  Plaintiff attended two additional hearings
2   before a new ALJ, on April 19, 2005 and June 17, 2005. (AR 79-94, 95-
3   114.)  This resulted in a decision filed on August 3, 2005, finding
4   Plaintiff to be not disabled under the Act. (AR 19-27.)

5       In his second issue, Plaintiff makes three separate contentions
6   of error, which the Court will address.

7
8       **A.    <u>Failure to Develop Record Regarding Foot Ailment</u>**.

9       The ALJ evaluated a left foot fracture which Plaintiff suffered
10  in 2001, indicating that subsequent examinations showed essentially
11  normal gait and range of motion within normal limits. (AR 21, 294-298,
12  507-518, 375-401.) As of November 2004, Plaintiff reported occasional
13  ankle swelling with some pain symptoms for which he took over-the-
14  counter ibuprofen. (AR 21-22, 508.)   Plaintiff indicated to a
15  consultative examiner ("CE") that he could walk five blocks and carry
16  25 pounds. (<u>Id</u>.)  Following the 2003 hearing, Plaintiff underwent a
17  bunionectomy on his left foot on November 12, 2004, which, the ALJ
18  noted, addressed and corrected a specific problem and resulted in an
19  uneventful recovery after a normal period of convalescence. (AR 22,
20  529-536, 537-544.)

21      Plaintiff asserts that the ALJ failed to note that his bunion was
22  "florid" long before the surgery, as early as January 2003. (AR 15,
23  citing AR 564, 581.)  Plaintiff asserts that the ALJ erred in failing
24  to request an orthopedic evaluation of Plaintiff following the
25  bunionectomy. (<u>Id</u>.)

26      As the ALJ noted, at the April 19, 2005 hearing, testimony was
27  taken from medical expert ("ME") Dr. Sparks, who relied upon a
28  consultative internal medicine evaluation ("CE") of November 1, 2004

(just prior to the foot surgery) by Dr. Rocely Ella-Tamayo, which limited Plaintiff to standing and walking for four hours at a time. (AR 85, 511-512.[2])

Further, while Dr. Sparks noted that Plaintiff had claimed to Dr. Ella-Tamayo that he had been having pain in his foot for ten years, there are inconsistencies in Plaintiff's own reporting, in that he made no such claim in his October 2000 disability report (AR 242), but did so in his October 2001 report. (AR 258.)  In any event, the issue Plaintiff raises with regard to his bunion condition is essentially not relevant to the determination of his disability.  The vocational expert ("VE") testified that an individual who had a reduced capacity for standing and walking due to bunion surgery could, nevertheless, perform thousands of jobs in the local and national economy. (AR 107-109.)  Plaintiff does not dispute that even if his RFC reduced his ability to stand and walk from that found by the ALJ, he would still be able to perform significant work in the local and national economy. (See 20 C.F.R. §§404.1520(g), 416.920(g) (2008).)


   B.   **Mental Status**.

   Plaintiff asserts error in the ALJ's finding that he does not have a severe mental disorder (other than depression). (JS at 15-16, 20-21.)

_____

   [2]   As noted by the ALJ, there is a discrepancy between the residual functional capacity ("RFC") assessed narratively by Dr. Ella-Tamayo and her assertions in the form attached to her report, which limit Plaintiff to standing and/or walking for two hours in an eight-hour workday. (AR 23, 515.)  The ALJ noted that nothing in the actual clinical findings would limit Plaintiff to standing for only two hours, except for the brief period of time before he underwent his bunionectomy. (Id.)

The ALJ's decision rejects a May 2003 assessment of Plaintiff's mental status performed by Dr. Ascani, a psychologist. (AR 23-24, 498-502.)   Indeed, Dr. Ascani opined that Plaintiff had a cognitive disorder and major depression with marked and extreme mental limitations. (AR 500, 505-506.)   In order to reject Dr. Ascani's opinion, and instead rely upon the conclusions of another examining physician, the ALJ must provide specific and legitimate reasons supported by substantial evidence.   See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).   In this case, the ALJ extensively discussed the mental health evidence in the record, and noted that Dr. Ascani's opinion conflicted with that of other examining doctors, including Dr. Edelman, who examined Plaintiff in 2001, and Dr. Smith, who examined Plaintiff in 2004. (AR 24, 287-292, 519-524.)   The ALJ also noted clinical findings by neurologist Dr. Mays, and also the findings of Drs. Edelman and Smith, which contradicted Dr. Ascani's conclusion that Plaintiff has a disabling mental impairment. (AR 23, 290-291, 296, 521-523.)   Further, with regard to Dr. Ascani, the ALJ severely depreciated her credibility because, for example, she noted gait and posture limitations, while the examining neurologist found no abnormality of gait. (AR 23, 294-298.)   The neurologist also opined that no assistive devices were necessary and that Plaintiff was able to perform fine motor activity with both upper and lower extremities. (Id.)   The ALJ also noted inconsistencies in Dr. Ascani's conclusion that Plaintiff's walk was uneven because he cannot see very well. (AR 23, citing AR 500.)   Again, as the ALJ noted, the neurologist noted no visual impairment, and the same conclusion was reported by the internal medicine CE on November 1, 2004 who found Plaintiff's visual acuity to be 20/30 in both eyes without corrective lenses, and noted

that Plaintiff was visually able to move about without assistance. (AR 23, citing AR at 513.)

The Court agrees with Plaintiff's complaint that the ALJ apparently depreciated the validity of Dr. Ascani's psychological testing based on his own interpretation, rather than any expert evidence in the record. Nevertheless, despite this shortcoming, the ALJ's remaining reasons for discounting Dr. Ascani's conclusions are based on substantial evidence, and must upheld.

## C. **Seizure Disorder**.

With regard to seizure symptoms, Plaintiff asserts that the ALJ "overstepped" in his evaluation of the seizure symptoms, by relying on his own interpretation of testimony and medical records concerning the effect of Plaintiff's seizure medication. (JS at 16, citing AR 25.[3]) Plaintiff also asserts that the ALJ failed to obtain additional medical evidence regarding the effect of his seizure medication. (Id.)

At the hearing, the ME testified that Plaintiff was not complying with his medication up to the middle of 2001, at which time he was still drinking alcohol, and further, that he had a low Dilantin level in June of 2001. The ME noted that Plaintiff claimed to be having one or two seizures a month, but in March 2001, told Dr. Edelman that he was having seizures every three months. (AR 23.) Further, new evidence submitted to the Appeals Council included an October 2004 report by neurologist Dr. Hijazin. (AR 592-594.) This physician noted

---

[3]     The Court understands an ALJ's responsibility as including interpretation of testimony and medical records. Thus, as phrased, Plaintiff's issue is a non sequitur. The Court will, instead, evaluate whether the testimony and medical records constitute substantial evidence.

that Plaintiff had had seizures in the past which were admitted by him to be related to alcohol, that he was not taking any medication, and that he was asymptomatic. (<u>Id</u>.)  At the hearing, Plaintiff testified that his seizures were correlated with his failure to take medication. (AR 92.) (<u>See also</u> Dr. Ella-Tamayo's note in November 2004 that Plaintiff was not taking medication for seizures [AR 508].)

Plaintiff's assertion that the ALJ had a duty to develop the record is not borne out by the facts or the law.  Such a duty is only manifested where the evidence is ambiguous or inadequate for proper evaluation of a claim.  <u>See</u> <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. (2001); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001).

For the foregoing reasons, the issues set forth in Plaintiff's second claim are without merit.


## II

### THE ALJ'S CREDIBILITY FINDINGS

### ARE SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff challenges the credibility findings made by the ALJ both as to himself and as to family members.  Plaintiff specifically claims that the ALJ failed to follow requirements for credibility assessment described in Social Security Ruling ("SSR") 96-7p. (JS at 6.)

In evaluating subjective symptoms, it is required that the ALJ evaluate whether, first, there is medical evidence of an underlying impairment reasonably likely to be the cause of the alleged symptoms, and once that is established, to provide specific, clear and convincing reasons to reject such allegations. (<u>See</u> <u>Bunnell v.</u> <u>Sullivan</u>, 947 F.2d 341, 345 (9th Cir. 1991)(<u>en banc</u>); <u>Thomas v.</u>

1  <u>Barnhart</u>, 278 F.3d 947, 960 (9th Cir. 2002).  Further, factors in
2  assessing credibility are specifically laid out in 20 C.F.R.
3  §§404.1529(c)(3); 416.929(c)(3) (2008).  These are not exclusive
4  factors but are specifically noted to be among those with relevance to
5  the evaluation of credibility.  The Court is required to examine the
6  credibility findings contained in the ALJ's decision to determine
7  whether these legal standards have been met.  Here, the ALJ noted that
8  Plaintiff has received routine and conservative treatment; that pain
9  medication is limited to occasional consumption of mild analgesics;
10  that Plaintiff has not been compliant in taking his seizure
11  medication; that Plaintiff has not been prescribed medication for any
12  condition other than difficulty sleeping, which has improved; that
13  Plaintiff's statements on the record suggest exaggeration of symptoms
14  as to frequency of seizures. (AR at 25.)

15      With regard to inconsistent statements about seizures, the fact
16  is that Plaintiff reported varying frequencies of seizures of a
17  significant level of distinction.  The Court has already reviewed this
18  evidence in its decision.  Moreover, as the ALJ noted, while Plaintiff
19  alleged that he did little besides sitting and watching television,
20  this assertion lacked some credibility based on other evidence in the
21  record, which indicated that he is able to dress and bathe himself, do
22  simple shopping, read the newspaper, attend church periodically, take
23  the bus or get a ride for transportation, and help with cleaning and
24  cooking. (<u>See</u> AR at 25, citing AR 508.)

25      Plaintiff's reported inability to communicate in English was also
26  noted by the ALJ as being inconsistent with evidence in the record,
27  such as the fact that he has also admitted to being 70% fluent in
28  English. (AR 90-91.)

Finally, with regard to Plaintiff's contention that the ALJ improperly depreciated the testimony of his family members, the Court notes that the ALJ concluded that these statements establish no different conclusions than Plaintiff's own testimony. (AR 25.)  The ALJ's statement that these statements would be devalued because Plaintiff's family has a pecuniary interest in his obtaining disability benefits is not an appropriate basis upon which to depreciate the credibility of these statements.  As Plaintiff correctly notes, family members typically have an interest, which may also be pecuniary, in a family member obtaining benefits. Nevertheless, the real issue here is whether these statements add anything of import to Plaintiff's own contentions with regard to his subjective limitations, and in that regard, the Court answers in the negative.  Moreover, these lay opinions conflicted with medical evidence, and the ALJ justifiably depreciated the lay opinions in favor of the medical testimony.  See Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

The Court thus concludes that Plaintiff's first issue has no merit.


**III**

**THE ALJ ADEQUATELY COMPLIED WITH**

**INSTRUCTIONS OF THE APPEALS COUNCIL**

Plaintiff's third and final issue is that the Appeals Council ordered the ALJ to obtain additional evidence concerning his impairments, including a mental status examination with psychological testing and medical source statements, but that the ALJ failed to comply.

After the first hearing, additional evidence was received, including the CE by Dr. Ella-Tamayo of November 1, 2004, a psychiatric evaluation of Dr. Smith of November 5, 2004; and additional medical records. (AR 507-544.)   After ALJ Varney's decision, the Appeals Council determined that there was no basis to change the decision, concluding that the ALJ had considered lay witness evidence with regard to evaluation of credibility. (AR 5-6.)

The parties raise an interesting question, that is, whether the Court can evaluate ALJ Varney's decision based upon whether or not it complied with the remand order of the Appeals Council.   As the Commissioner notes, the remand order itself is not subject to review or enforcement by the Court. (JS at 23, citing Russell v. Bowen, 856 F.2d 81, 84 (9th Cir. 1988).)   The Court's role is limited to evaluating the decision of the ALJ.   Here, the Court has extensively and exhaustively discussed the adequacy of the ALJ's evaluation of the medical evidence, including evidence as to Plaintiff's foot problems, seizures, and his mental status.   The Court has found the ALJ's decision to be supported by substantial evidence.   The ALJ discharged his duty both to evaluate the evidence and to properly resolve any conflicts.

For the foregoing reasons, the decision of the ALJ will be affirmed.   The Complaint will be dismissed with prejudice.

**IT IS SO ORDERED.**

DATED: December 8, 2008                    /s/
                                   VICTOR B. KENTON
                                   UNITED STATES MAGISTRATE JUDGE

10